UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



FILED
MAY 2 9 2007

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JOEY LOPEZ, | * | CIV 05-1017 |
| | * | **2007 D.S.D. 10** |
| Plaintiff, | * | |
| | * | |
| -vs- | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| CITY OF BROOKINGS and BROOKINGS | * | |
| MUNICIPAL UTILITIES, d/b/a SWIFTEL | * | |
| COMMUNICATIONS, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KORNMANN, U.S. DISTRICT JUDGE**

[¶1]    This is an action brought under Title VII.  Joey Lopez ("Lopez") alleges that his employer, the named defendants, discriminated against him because of his race, Hispanic.  References to race will include claims of discrimination based upon national origin.  He alleges a failure to hire, i.e. a promotion to a full time position, a hostile work environment, and a constructive discharge, including failure to re-hire as a part time employee after Lopez resigned his employment.  He also alleges a violation of the Americans with Disabilities Act ("ADA") which the court will later discuss.

[¶2]    Defendants have filed a motion for summary judgment (Doc. 49).  We must first note the long standing rule in the Eighth Circuit "that summary judgment should seldom be used in employment discrimination cases."  Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citing cases).  A summary judgment should not be granted "unless the evidence could not support any reasonable inference" of discrimination.  Lynn v. Deaconess Med. Ctr.-West Campus, 160 F.3d 484, 486-87 (8th Cir. 1998).  *See also* Gill v. Reorganized School Dist. R-6, Festus, Mo., 32 F.3d 376, 377 (8th Cir. 1994) ("apply the standard with caution").  Summary judgment should be granted where the evidence is

such that it would require a directed verdict for the moving party.  *See* Anderson v. Liberty Lobby, Inc., 477 U.S.242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

[¶3]   Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c) and Donaho v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996).  The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact", since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party."  Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995).

[¶4]   In considering the motion for summary judgment, this Court must view the facts in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts.  Donaho, 74 F.3d at 897-898 (*citing* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

[¶5]   To defeat a summary judgment motion, Lopez must substantiate his allegations with sufficient probative evidence that would allow a jury to find in his favor based on more than just speculation.  Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (*citing* Gregory v. Rogers, 974 F.2d 1006, 1010 (8th Cir.1992)).

[¶6]   The court will follow these directives.

## CLAIMS OF FAILURE TO PROMOTE OR RE-HIRE BASED ON RACE

[¶7]    Title VII makes it unlawful for an employer "to fail or refuse to hire or to
discharge any individual, or otherwise to discriminate against any individual with respect
to his compensation, terms, conditions, or privileges of employment, because of such
individual's race, color, religion, sex, or national origin." 42 U.S.C.§ 2000e-2(a)(l).  Title
VII protects "more than 'terms' and 'conditions' in the narrow contractual sense."
Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d
662 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S.
Ct. 998, 140 L. Ed. 2d 201 (1998)) (internal quotation omitted).  The Act is described as
showing Congress' intention to define discrimination in the broadest possible terms, and
neither enumerates specific discriminatory practices nor defines the breadth of actionable
illegal activities.  See Hall v. Gus Constr. Co., Inc., 842 F.2d 1010, 1014 (8th Cir. 1988).

[¶8]    McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668
 (1973), provides the appropriate starting point as to the claims of failure to promote
based upon the race of Lopez.  He bears the initial burden of making out at least a prima
facie case of discrimination.  To do this, he must show: (1) he belonged to a protected
group; (2) he was qualified for the position in question; (3) he was subjected to an
adverse employment action; and (4) the adverse action occurred under circumstances
giving rise to an inference of discrimination.  Tatum v. City of Berkeley, 408 F.3d 543,
551 (8th Cir. 2005).  If Lopez makes out a prima facie case of discrimination, the burden
shifts to the defendants to articulate a legitimate nondiscriminatory reason for the action
of not offering the full time position to Lopez or not re-employing him for the part time
position after he had resigned.  If the defendants meet their burden, then Lopez must
show that the nondiscriminatory reason was a pretext for discrimination.  Id.

[¶9]    In looking at Lopez himself, he meets the first three requirements of McDonnell
Douglas.  In looking at Lopez in conjunction with his claimed disabled companion, he
would be "qualified" for the position only if he were able to come to work and stay at

3

work on a full time basis. For the purpose of this portion of the claims made, I will assume that he was "qualified" for the position in question and would have been able to work on a full time basis. He was qualified for the part time position from which he sought to move. Despite this assumption, he does not meet the fourth requirement because the adverse actions did not occur under circumstances giving rise to any inference of discrimination based on race. Lopez has thus not made out a prima facie case.

[¶10]   Assuming, however, for the purpose of the pending motion dealing with racial discrimination, that he has made out a prima facie case, the court would then apply the burden-shifting framework of McDonnell Douglas. The burden of production would then shift to defendants to articulate a "legitimate, nondiscriminatory reason" for the employment decision to not promote Lopez and to not re-employ him. Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1046 (8th Cir. 2002) (*citing* Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Defendants have easily met such burden. Lopez had been counseled nine times about problems with his work performance whereas the non-Hispanic person who was selected for the promotion had no such incidents. Lopez had a history of not timely completing his time records, taking defendants' cellular telephone home for personal usage and leaving it there for the use of his companion without authorization, often leaving work without authorization, using his office computer for personal business, being tardy for work, not following up on customer leads, and not performing at the level to which the employee selected for the promotion was performing. An impartial decision carefully thought out was made as to which employee to promote and race had nothing to do with the process or the decision. Nor did race have anything to do with the refusal of defendants to re-employ Lopez after he had resigned his part time position. Defendants have easily articulated legitimate and nondiscriminatory reasons for not promoting and for not re-employing Lopez.

4

[¶11]  The next question is whether there is sufficient evidence, either direct or circumstantial, from which a jury could conclude that the failure to promote or the failure to re-employ was based on the race of Lopez despite the employer's proffered explanations.  There is no such evidence of pretext.  Lopez has not produced evidence that he was performing satisfactorily to justify the promotion (over the employee who was promoted) and there is no evidence to present a triable issue of fact.  Nor has Lopez produced evidence that he should have been re-employed after he voluntarily resigned after misconduct at work and after his significant other had burned all bridges.  A showing of pretext also requires more than a minimal showing.  Lopez and the employee who received the promotion are and were dissimilar in their work records and as to how they presented during the interview process.  As has been often said, a court does not sit as a super-personnel department passing on the wisdom or the fairness of decisions made by the employer, unless the decisions were intentionally discriminatory.  *See* Edmund v. MidAm. Energy Co., 299 F.3d 679, 686 (8th Cir. 2002) (*citing* Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir.2001)).

[¶12]  There is no evidence of race based animus by defendants.  It is of some significance that Lopez was hired initially by the same supervisor who failed to promote him to a position of full time employment and who refused to re-employ him.  Lopez has been unable to provide any evidence, either directly or by inference, beyond his own speculation, that his alleged mistreatment was due to his protected status.  *See* Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 455 (8th Cir. 1997) (party opposing summary judgment must provide sufficient probative evidence which would permit the court to rule in its favor rather than engaging in conjecture and speculation) (citation omitted)).  In addition, defendants have asserted legitimate and nondiscriminatory reasons for not promoting Lopez and not re-employing him; such reasons are clearly not pretextual.

[¶13]   A summary judgment should be granted as to all claims for failure to promote and failure to re-employ based upon race.  There are no genuine issues of material fact as to such claims.

## CLAIMS OF HOSTILE WORK ENVIRONMENT

[¶14]   "Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993) (*quoting* Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)); Nitsche v. CEO of Osage Valley Elec. Co-op., 446 F.3d 841, 845-846 (8th Cir. 2006) (requiring hostile work environment plaintiff to 'clear a high threshold to demonstrate actionable harm'); Al-Zubaidy v. TEK Indust., Inc., 406 F.3d 1030, 1039 (8th Cir. 2005) (holding that lower courts must apply 'demanding harassment standards' when considering hostile work environment claims); Powell v. Yellow Book USA., Inc., 445 F.3d 1074, 1077 (8th Cir. 2006) (holding that 'Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight')." Vajdl v. Mesasbi Academy of Kidspeace, Inc., 2007 WL 1201867 (8th Cir. 2007).

[¶15]   A hostile work environment "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" as viewed objectively by a reasonable person.  Tademe v. Saint Cloud State Univ., 328 F.3d 982, 991 (8th Cir. 2003) (internal quotation omitted).  "To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant."  Nitsche, 446 F.3d at 846 (citations omitted).  "Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or

6

hostile that it poisoned the work environment." *Id.* (*citing* Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir.2003) (*quoting* Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir.1999))).  A hostile work environment arises when the discriminatory conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Hall, 842 F.2d at 1013.

[¶16]  As to the claims of a hostile work environment, Lopez must first establish a prima facie case.  He must show: (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and his protected-group status; and (4) the harassment affected a term, condition, or privilege of employment. *See* Carter v. Chrysler Corp., 173 F.3d 693, 700 (8th Cir. 1999).  Lopez has made no showing that any supervisor of his knew or even should have known of the alleged harassment.  Thus, there is no basis for any claim of vicarious liability on the part of defendants.  The only harassment he alleges deals with non-supervisory employees and customers.  There is therefore an additional element as to which Lopez must establish a prima facie case, namely that defendants knew or should have known of the harassment and failed to take prompt and effective remedial action. *See* Carter, 173 F.3d at 700. Lopez admits that he at no time during his employment reported any harassment to anyone.  He made no complaints of any kind although he knew or clearly shown have known from postings at his place of employment that he had the right to lodge any such complaints and was urged to do so without fear of retaliation.  Lopez cannot meet and has not met the fifth requirement.

[¶17]  Putting this failure aside for the moment, there are certain factors which courts consider when determining whether harassment is sufficiently severe or pervasive.  This includes: "the frequency of the discriminatory conduct; its severity; whether it is physically  threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.

7

[¶18]   The conduct alleged by Lopez, which we assume to be true for the purposes of the pending summary judgment motion, may have caused some minor irritation to him.  As a matter of law, however, it was not so severe or pervasive as to have affected a term, condition, or privilege of the employment of Lopez.  *See* Austin v. Minnesota Min., Mfg. Co., 193 F.3d 992, 944 (8th Cir. 1999) (holding that the embarrassment occasioned by posting of derogatory flyer and distribution of plaintiff's test results were not sufficient to establish hostile work environment claim).  *See also* Scusa, 181 F.3d at 965-67 (observing that unpleasant conduct and rude comments were not so severe or pervasive as to have altered conditions of plaintiff's employment).

[¶19]   There are no genuine issues of material fact as to the claim of a hostile work environment.  A summary judgment should be granted as to such claim arising out of claimed racial discrimination.

## CLAIMS OF CONSTRUCTIVE DISCHARGE BASED ON RACE

[¶20]   Lopez also alleges a claim for constructive discharge.  It is undisputed that, after Lopez was notified that he was not selected for the full time position, Lopez telephoned his overall supervisor in Brookings, SD, and resigned.  He made no mention of any claims of discrimination or mistreatment.  He resigned after his significant other had telephoned his immediate supervisor in Watertown, SD, using profanity and accusing the supervisor of having failed to promote Lopez because the supervisor was having a sexual affair with the employee who was promoted to the full time position.  Lopez no doubt concluded that his significant other had burned his bridges.  He acknowledged that the telephone call was against his wishes and was improper conduct.  He has also acknowledged that he was guilty of misconduct in treating the employee who was promoted with disrespect the day that Lopez resigned his part time position.

[¶21]   A constructive discharge claim  "requires considerably more proof than an unpleasant and unprofessional environment."  Jones v. Fitzgerald, 285 F.3d 705, 716 (8th Cir. 2002).  A working atmosphere may not be ideal, but "'a feeling of being unfairly

8

criticized or [having to endure] difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" (internal marks omitted) (alteration in original). Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1160 (8th Cir. 1999).

[¶22]   "To show 'constructive discharge, a plaintiff must show more than just a Title VII violation by her employer.' Phillips v. Taco Bell Corp., 156 F.3d 884, 890 (8th Cir. 1998) (citing Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1247 (8th Cir.1998)). 'A constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit.' Johnson v. Runyon, 137 F.3d 1081, 1083 (8th Cir.) . . . 'To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit.' Summit v. S-B Power Tool, 121 F.3d 416, 421 (8th Cir. 1997) . . . The intent element is satisfied by a demonstration that quitting was 'a reasonably foreseeable consequence of the employer's discriminatory actions.' Id. The employee has an obligation to act reasonably by not assuming the worst and not jumping to conclusions too quickly. Id." Breeding, 164 F.3d at 1159.

[¶23]   As a matter of law, no constructive discharge occurred as to Mr. Lopez. He acted out of anger and frustration, including frustration at what he and his significant other had caused by their actions on the day Lopez resigned.

[¶24]   "The question of whether an environment is sufficiently hostile to be actionable is a legal question, and, like any legal question, is a matter for the court to decide. In other words, a showing of some minimal level of harassment is necessary before a case is submissible to a jury. A court of course may decide this issue of submissibility on summary judgment. See, e.g. Alagna v. Smithville R-II School Dist., 324 F.3d 975, 979-81 (8th Cir. 2003)." Jackson v. Flink Ink North American Corporation, 382 F.3d 869, 869 (8th Cir. 2004).

[¶25]  All claims by Lopez of a hostile work environment are without legal merit.  He also failed to provide any notice to his employer so the employer could take remedial action.  This is not to be permitted in the case of non-supervisors.  There are no genuine issues of any material fact as to these claims and summary judgment should be entered.

## CLAIMS OF DISCRIMINATION AS TO DISABILITIES

[¶26]  We turn now to the claims advanced under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  Lopez makes no claim to be himself disabled or to have a disability.  His claims under the ADA stem from the alleged disability of the companion of Lopez and the alleged employment adverse actions stemming from the disability.  The ADA provides in part: "As used in subsection (a) of this section, the term 'discriminate' includes . . . (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]" 42 U.S.C. §12112(b)(4).  Very few cases have addressed these "association" facts.

[¶27]  In order to establish a prima facie case of "association discrimination" under the ADA, Lopez must demonstrate the following: (1) Lopez was "qualified" for the job at the time of the adverse employment action; (2) Lopez was subjected to adverse employment action; (3) Lopez was known by defendants at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1085 (10th Cir. 1997). *See also* Hilburn v. Murata Elecs. N.Am., Inc., 181 F.3d 1220, 1230-31 (11th Cir. 1999) (applying the test).  The rationale for this statutory provision is easily understood.  For example, the employer discharges an employee who is known to be living with a disabled individual with a communicable disease, e.g. AIDS or tuberculosis, the employer fearing that the employee will become infected and impact the

10

health insurance program of the employer.  The employee could then show that the adverse employment action stemmed directly from the disability of the companion. `

[¶28]  There are some very interesting twists in this case.  Unlike a claim brought by a disabled person, an employer is not required to reasonably accommodate an employee based on the association of the employee with a disabled person.  29 C.F.R. Pt. 1630, App. (§1630.8) and Den Hartog, 129 F.3d 1084-85.  The C.F.R. section provides: "[A]n employee would not be entitled to a modified work schedule as an accommodation to enable the employee to care for [a family member] with a disability."  To the same effect is Tyndall v. National Educ. Centers, 31 F.3d 209, 214 (4th Cir. 1994).  This last cited case also stands for the proposition that attendance problems caused by attending to another person's disability (which attendance problems render the employee unable to fulfill the essential functions of the job) result in the employee not being a "qualified individual with a disability." *Id.*

[¶29]  Lopez is presented with, in effect, a Catch 22 situation.  If, in fact, his companion was not disabled and was not thought to be disabled by the employer, Lopez has no cause of action under the ADA.  On the other hand, if his companion was disabled, requiring Lopez to be often absent from work to care for her, he could not be a "qualified employee" for the full time position and thus has no cause of action under the ADA.  We are not here dealing with any claims under the Family Medical Leave Act.  At a minimum, Lopez had no legal right to leave his part time position (as he often did) to run errands for his companion.  An employee who cannot regularly work full time in connection with a full time position is not a "qualified" employee under the ADA.

[¶30]  We know that "[t]he ADA defines a disability as: '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" Webner v. Titan Distribution, Inc., 267 F.3d 828, 833 (8th Cir. 2001) (*quoting* 42 U.S.C. § 12102(2)).

11

[¶31]  Lopez alleges that his supervisor told him that he did not receive the promotion to full time employment because he could not work full time, given the condition of his companion.  Defendants deny that any such conversation took place.  They also allege that, even assuming such conversation took place, the decision not to promote Lopez was based on a number of non-discriminatory factors and they have carefully catalogued them, as described earlier in this opinion.  We assume, of course, for the purpose of considering the pending motion, that the statement was made by the supervisor who participated in the decision to not promote Lopez.

[¶32]  Considering first the element explained in (A) above, Lopez alleges that his companion has cardiomyopathy, claiming without any evidence or expert opinions that it is a "very severe disability."  Lopez has presented no medical opinions or records, claiming that he is not obligated to do this since a medical release form has been provided to allow defendants to obtain the medical records.  Lopez misunderstands his burden of production, however, in the face of a motion for summary judgment.  It is his responsibility to demonstrate that there are genuine issues of material fact to prevent the grant of the summary judgment.  Looking in a medical dictionary, there are many types of cardiomyopathy.  Neither the parties nor this court have the medical expertise to describe the nature of the ailment or the extent of any disability resulting therefrom.  There is no competent evidence in the record as to the nature or cause of the medical condition of Lopez' companion.  There is no competent evidence as to the extent of the disability and what, if any, major life activities might be impacted by any such medical condition.  There is nothing in the record dealing with any major life activity.  Lopez cannot normally rely on speculation

[¶33]  We know also that the employee who received the promotion sought by Lopez has a wife who has very serious medical problems which are disabling, at least to some extent.  It is disputed whether such problems constitute a disability under the ADA.

12

[¶34]   There is no competent evidence in the record to answer any of the questions about the conditions that would tell us whether there is any disability under the ADA and the extent and nature thereof.

[¶35]   The record shows that Lopez told the defendants during his interview, as did the employee who was promoted, that he could work full time with no problems.  He made no request for any accommodation of any kind.  Nor, as discussed above, would he have been entitled to any accommodation under the facts of this case.

[¶36]   For ADA purposes, the definition of "regarded as disabled" assumes that the individual is not actually disabled.  Wenzel v. Missouri-American Water Co., 404 F.3d 1038, 1041 (8th Cir. 2005).  In a jury trial, the judge should, under appropriate facts, instruct the jury that the two definitions, i.e. "actually disabled" and "regarded as disabled" are mutually exclusive and that the jury could not find both definitions to apply in a given case.  Christensen v. Titan Distribution, Inc., 481 F.3d 1085, 1093-1096 (8th Cir. 2007).

[¶37]   It is clear that defendants have regarded the companion of Lopez as at least somewhat disabled.  All they knew, however, was that she suffered from a medical condition claimed by Lopez to be very serious.  There is no evidence that defendants had any information about any limitations of major life activities.  Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  Genthe v. Lincoln, 383 F.3d 713, 716 (8th Cir. 2004).  An employer regards someone as disabled if the employer mistakenly believes that there is an impairment which would substantially limit one or more major life activities.  Chalfant, 475 F.3d at 988-89 (quoting Wenzel, 404 F.3d at 1041).  We know that a person is substantially limited from working when the person "is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes."  Chalfant, 475 F.3d at 989 (quotation omitted).  If the defendants here mistakenly believed that the companion of Lopez was unable to perform a class of jobs or a broad range of jobs, then the employer regarded the companion as disabled.  See id.

13

[¶38]  Having said all this, defendants have conceded that, for the purpose of the summary judgment motion, the court is to consider the companion of Lopez to have a disability under the ADA.  I will assume for the purpose of the summary judgment motion that the companion of Lopez does have a disability under the ADA.

[¶39]  Assuming further that Lopez has presented a prima facie case as to discrimination based upon disability, we would then require defendants to proffer legitimate nondiscriminatory reasons for the adverse employment actions.  *See* McDonnell Douglas, 411 U.S. at 802.  The defendants have set forth, as previously explained, legitimate non-discriminatory reasons for the failure to promote Lopez (and for the refusal to re-employ him after he had quit under rather adverse circumstances caused by his conduct and that of his companion).  The record is undisputed that defendants went through a very detailed consideration of factors helping to guide them in making the best decision as to which employee to promote.  They carefully documented many things in writing.  They conducted thorough interviews of all candidates selected to be interviewed.  The burden then shifts back to Lopez to show that the proffered reasons are pretextual.  *See Id.* at 804.  There is absolutely no showing of pretext.

[¶40]  There is no genuine issue of any material fact as to the liability of defendants for ` violations of the ADA.  The motion for a summary judgment should be granted.

[¶41]  Now, therefore,

[¶42]  IT IS ORDERED, as follows:

    1) The motion for a summary judgment (Doc. 49) is granted.

    2) No costs are to be taxed.

[¶43]  Dated this *29th* day of May, 2007.

BY THE COURT:

CHARLES B.  KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
    DEPUTY
    (SEAL)

14